**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ERVIN WILSON,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, et al.,<br><br>Respondents. | Civil Action No. 1:26-cv-13354-AK |

**MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

**ANGEL KELLEY, D.J.**

Petitioner Ervin Wilson ("Wilson" or "Petitioner") is detained at Plymouth County Correctional Facility with a final order of removal and pending removal from the United States. Wilson has filed this Petition for Writ of Habeas Corpus (the "Petition") pursuant to 28 U.S.C. § 2241 challenging his detention. [Dkt. 1]. The Government opposes his release, stating his detention is lawful under 8 U.S.C. § 1231(a). [Dkt. 9]. For the following reasons, the Petition is **DENIED**.

## I. BACKGROUND

Petitioner is a native and citizen of Ghana who entered the United States in 2022. [Dkt. 1-4 at 4]. On April 22, 2025, Petitioner was placed in removal proceedings and detained by Immigration and Customs Enforcement ("ICE"). [Dkt. 1-2 at 2]. On August 6, 2025, at Petitioner's request, the immigration court conducted a custody redetermination hearing where an Immigration Judge ("IJ") denied bond, finding Petitioner posed a danger to the community by clear and convincing evidence. [Id. ¶ 2]. The determination was based upon Petitioner's lengthy criminal history, including his arrests for disorderly conduct, sixth degree larceny, third degree

assault, and speeding. [Id. at 4]. The IJ considered reports from four law enforcement encounters in Connecticut between September 2024 and March 2025, as well as two criminal protective orders. [Dkt. 1-4 at 4]. The criminal charges were nolle prosed in July 2025, and others later dismissed. [Dkts. 1 ¶ 7; 1-4 at 4]. On August 6, 2025, the IJ also denied Petitioner's application for asylum and other relief and ordered him removed from the United States. [Dkt. 9-2].

On April 24, 2026, the immigration court convened a second custody redetermination hearing due to material change in circumstances. [Dkt. 1-2]. The Court denied his request for change in custody and found that DHS had again established Petitioner posed a danger to the community by clear and convincing evidence. [Id.]. On June 2, 2026, the IJ issued her written decision reasoning that "although [Petitioner's] criminal history did not result in convictions, the underlying facts surrounding [his] criminal history were significant" and established he posed a danger to the community. [Dkt. 1-2 at 5]. Petitioner has filed an appeal of the bond decision with the BIA. [Dkt. 1-4].

On May 14, 2026, Petitioner's removal order became administratively final when the Board of Immigration Appeals ("BIA") dismissed his appeal. [Dkt. 9-2]. Petitioner is married to a United States citizen, who has filed an I-130 Petition on his behalf. [Dkt. 1-5 at 26, 52]. Petitioner claims that he is a Calderon class member and his continued detention violates the Calderon Settlement Agreement[1]. [Dkt. 1 ¶¶ 6, 13]. Petitioner disputes the determination by the government that he is a public safety threat justifying his continued detention and removal. [Id.].

On May 19, 2026, in accordance with the Calderon Settlement Agreement, [Dkt. 9-3], the attorney representing ICE notified Wilson's class counsel of the agency's decision to continue his detention. [Dkt. 1-1 at 5]. On June 24, 2026, the ICE attorney provided class counsel the

[1] Calderon-Jimenez v. Mayorkas, 1:18-cv-10225-MLW.

Deputy Field Office Director's ("DFOD") decision that the agency determined that Wilson poses a threat to public safety and intends to remove him from the United States. [Id. at 2]. On July 7, 2026, the government attorney communicated again with class counsel documenting their compliance with Calderon requirements and intention to oppose any motion to enforce. [Id. at 6]. No motion to enforce the Calderon Settlement Agreement has been filed. [Dkts. 9 at 6; 1-1 at 6]. On July 27, 2026, the Respondents provided a declaration that the agency is ready to effectuate Petitioner's final removal order as soon as the Court's stay is lifted. [Dkt. 9-1]. Respondents have also provided the Court with a copy of the operable travel documents they have in hand to effectuate removal. [Dkt. 9-4].

## II. LEGAL STANDARD

28 U.S.C. Section 2241 confers jurisdiction on this Court to order the release of any person who is held in the custody of the United States in violation of the "laws . . . of the United States" or the United States Constitution. 28 U.S.C. § 2241(c). The burden rests on the person in custody to prove his detention is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) (citing Walker v. Johnston, 312 U.S. 275, 286 (1941)). Here, the Petitioner challenges his continued detention based upon the findings of the immigration courts and the DFOD. The Petition [Dkt. 1] does not contest the validity of the final removal order, only the adverse custody determinations and continued detention.

## III. DISCUSSION

### A. Final Removal Order

On May 14, 2026, Wilson's removal order became administratively final. The detention and removal of noncitizens with final orders of removal is governed by 8 U.S.C. § 1231 ("Section 1231"). Section "1231 explains what to do if the alien is ordered removed." Johnson v.

Guzman Chavez, 594 U.S. 523, 544 (2021). "Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-day 'removal period.'" Id. at 528 (citing 8 U. S. C. § 1231(a)(1)(A)). The removal period begins on the latest of three dates: (1) "the date the order of removal becomes 'administratively final,'" (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement. 8 U.S.C. § 1231(a)(1)(B). Importantly, "DHS need not wait for the alien to seek, and a court to complete, judicial review of the removal order before executing it. Rather, once the BIA has reviewed the order (or the time for seeking the BIA's review has expired), DHS is free to remove the alien unless a court issues a stay." Johnson, 594 U.S. at 534-35 (emphasis in original). During the removal period, detention is mandatory. Id. at 528 (2021). Here, the Petitioner has a final removal order, thus his detention is legal to effectuate his removal. See 8 U.S.C. § 1231(a)(2).

Further, the government may detain an individual beyond the ninety-day removal period. For example, if a noncitizen subject to a final order of removal is not removed from the United States within the statutory ninety-day removal period, see 8 U.S.C. § 1231(a)(1)(A), ICE may either release the noncitizen under supervision, see 8 U.S.C. § 1231(a)(3), or continue to detain certain noncitizens under 8 U.S.C. § 1231(a)(6). See Johnson, 594 U.S. at 528-29. Section 1231(a)(6) "provides that an alien may be detained beyond the removal period or released under supervision if he is (1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order." Id. at 529.

Here, the immigration court found Petitioner a danger to the community by clear and convincing evidence and the DFOD determined he was a public safety threat. The IJ provided a

written decision setting out the proper burden of proof upon the government in Petitioner's bond redetermination hearing. [Dkt. 1-2].[2] Respondents contend that Petitioner's detention beyond the 90-day period is constitutional and serves a legitimate governmental interest in facilitating the removal of persons illegally in the country. [Dkt. 9 at 4 (citing Hernandez-Lara v. Lyons, 10 F.4th 19, 32 (1st Cir. 2021) (cleaned up))]. On July 27, 2026, Respondents filed their Response and a motion to vacate the stay, [Dkt. 9-4], asserting that ICE was ready to effectuate Petitioner's final removal to Ghana and provided travel documents. The Court agrees that Petitioner's detention serves as a legitimate government interest in facilitating his removal and finds no due process violations in the record.

**B. Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241**

Petitioner challenges the lawfulness of his lengthy detention under 28 U.S.C. § 2241. Under 28 U.S.C. § 2241, "habeas proceedings are available as a forum for statutory and constitutional challenges to post-removal-period detention." Zadvydas v. Davis, 533 U.S. 678, 678 (2001). In Zadvydas, the Supreme Court noted, "[i]t is unlikely that Congress believed that all reasonably foreseeable removals could be accomplished in 90 days, but there is reason to believe that it doubted the constitutionality of more than six months' detention. Thus, for the sake of uniform administration in the federal courts, six months is the appropriate period. After the 6-month period, once an alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must furnish evidence sufficient to rebut that showing." Id. at 680.

---

[2] Because Petitioner's removal order became administratively final on May 14, 2026, his challenges to the IJ's April 24, 2026 dangerousness finding and June 2, 2026 memorandum are irrelevant. Now that Petitioner's detention is mandatory, Petitioner is not entitled to a bond hearing and the IJ cannot grant bond.

In the present case, Petitioner has been held past the 90-day removal period. However, less than 6-months have passed since Petitioner's final order of removal. Moreover, the Respondents have noticed their intent to execute Petitioner's removal at the conclusion of these proceedings. Respondents would have effectuated his removal the week of August 18, 2026, but for this Court's stay order. [Dkt. 9-1]. Accordingly, it is clear to the Court that Petitioner is being lawfully detained pursuant to 8 U.S.C. § 1231(a)(6), the 6-month period has not expired under 28 U.S.C. § 2241, and his removal is reasonably foreseeable in the future.

**C. Calderon Settlement Agreement.**

Petitioner further contends that his detention violates the Calderon Settlement Agreement, [Dkt. 9-3], which "requires ICE to assess whether he currently poses a public-safety threat under the totality of the circumstances." [Dkt. 1 ¶ 13]. Petitioner argues that ICE relied on 2024 and 2025 arrests that were resolved without conviction and failed to consider his evidence in support of his release. [Id.]. A careful review of the record, however, shows that the government has complied with the terms of the Calderon Settlement Agreement concerning the Petitioner. The parties participated in the "meet and confer process" and the DFOD decided the matter after Petitioner's submission of relevant evidence. See [Dkts. 1-1; 9-3]. Further, the record shows that Petitioner has not filed a motion to enforce the agreement, which is the appropriate process for his claims. The burden rests on the Petitioner to prove his detention is unlawful when seeking relief pursuant to Section 2241. See Espinoza, 558 F.3d at 89 (citing Walker, 312 U.S. at 286). Accordingly, the Petitioner has failed to show a violation of due process concerning his Calderon class membership and detention.

## IV. CONCLUSION

For the foregoing reasons, Wilson's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [Dkt. 1] is **DENIED**. Accordingly, the Court's Stay of Transfer and Removal Order [Dkt. 6] is hereby **VACATED**.

**SO ORDERED**.

Dated: September 18, 2026

/s/ Angel Kelley
Hon. Angel Kelley
United States District Judge